In the Matter of Frank L. CATRON and Barbara L. Catron, Debtors.

Ronald J. ST. PETER, Kelly J. St. Peter, and Derrek C. Wadley, Plaintiffs,

v.

Frank Lee CATRON, Defendant.

Bankruptcy No. 81–02346–3.
Adv. No. 81–1611–3.

United States Bankruptcy Court,
W. D. Missouri, W. D.

Nov. 2, 1981.

J. Kirk Rahm, Warrensburg, Mo., for plaintiffs.

John Burnett, Kansas City, Mo., for defendant.

## FINAL JUDGMENT GRANTING RELIEF FROM THE AUTOMATIC STAY ON CONDITION THAT DECISION ON DISCHARGEABILITY OF ANY JUDGMENT BE RESERVED TO THE BANKRUPTCY COURT

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiffs seek relief from the automatic stay for the purpose of prosecuting a personal injury action against the debtor in a state court. The defendant, in general terms, resists the granting of the requested relief.

Therefore, in accordance with the provisions of § 362(e) of the Bankruptcy Code, the court conducted a hearing on the complaint on October 1, 1981. The evidence then adduced was to the effect that the plaintiff Wadley was the driver and the plaintiff St. Peter a passenger in an automobile traveling in a northerly direction on Missouri Route B on January 12, 1981, in Henry County in the vicinity of Whiteman Air Force Base. As they approached a hill, they saw the vehicle being driven by the defendant on the same side of the highway as they were, attempting to pass a vehicle driven by one Newman. The plaintiffs' vehicle attempted to avoid a collision, but could not, and the vehicles therefore collided at the foot of the hill in the plaintiffs' lane of traffic. The plaintiffs sustained injuries as did the defendant. The defendant's testimony in the hearing of October 1, 1981, was to the effect that he was driving in a southerly direction on Route B on January 12, 1981, at a rate of speed of about 50–55 miles per hour when he came up behind a vehicle traveling at a low rate of speed; then, when he attempted to apply his brakes, they failed; that it was therefore necessary for him to go into the lane of traffic; and that, as a consequence, in spite of his attempts at avoidance, he collided with the vehicle containing the plaintiffs.

The issues thus joined by pleading and proof in this action involve questions affecting the fundamental policy of bankruptcy law and jurisprudence generally. Under the old Bankruptcy Act, unliquidated tort claims were ordinarily not provable in bankruptcy and were therefore preserved for reduction to judgment in nonbankruptcy courts. But, under the provisions of § 101(4) of the Bankruptcy Code, a claim allowable against the bankruptcy estate (and thus dischargeable unless within one of the explicit exceptions to discharge in § 523 of the Code) may include an "unliquidated" claim.

At the same time, the legislative history of the Bankruptcy Code has drastically altered the law respecting the dischargeability *vel non* of unliquidated liabilities for "willful and malicious" injury to person or property. Under the Bankruptcy Act, it was regarded as a sufficient showing of willfulness and malice that the bankrupt committed an intentional act in knowing disregard of the right of another.[1] Thus, in a case such as that now at bar, the defendant's denial of any intention to cause injury to the plaintiffs could not be regarded as conclusive. The exception was intended still to apply when there had been any "reckless disregard," under the totality of facts and circumstances, of the known right of the plaintiff to be free of negligently inflicted injury to person or property.

---

1. "An injury to person or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will. The word 'wilful' means nothing more than intentionally doing an act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." 1A Collier on Bankruptcy ¶ 17.17[1], pp. 1650.4, 1652 (14th ed. 1978).

Even under the former Bankruptcy Act, as the effective date of the new Bankruptcy Code approached, some decisions ignored the above principles (which had reigned since the time of the Supreme Court decision in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 [1904]) to apply a radical standard of determining willfulness and malice, admittedly "subjective" in its approach, which ruled out a finding of willfulness and malice in almost every imaginable case except that in which it was the defendant's admitted intention to inflict injury upon the plaintiff's person or property. Thus, in *Matter of Roberts*, 8 B.R. 291, 293 (W.D.Mo.1981), it was held that, if a defendant professed to believe that he had a right to commit the proscribed act, that belief, "even though unreasonable, precludes a wilful and malicious intent." Other decisions in this district have followed this rule which refuses to honor the "reckless disregard" or "objective" standard and to impose upon the plaintiff the duty of proving a "subjective, conscious intent" on the part of the defendant.[2] These decisions would all but erase any possibility that an exception to discharge for injury to person or property could be established.

Furthermore, the advent of the new Code gave those decisions additional impetus in its express rejection of the "reckless disregard" standard. See the Legislative History under § 523(a)(6) of the Bankruptcy Code to the effect that "[t]o the extent that *Tinker v. Colwell* 1[93] U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (190[4]), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled." Consequently, decisions under the Code have followed the lead of the radical decisions noted above which were decided in the waning days of the old Bankruptcy Act. See, e. g., *Matter of Nelson*, 10 B.R. 691, 692 (N.D.Ill.Bkrtcy.1981) (Conversion of secured property and disposition by sale is not willful and malicious without a demonstrated "intent to do harm." The court notes that, "when the injury is conversion of secured property such a standard virtually renders the remedy meaningless. Under what circumstances, for instance, would a debtor ever sell secured property out of malice? Nevertheless . . . this Court will follow it in the absence of a binding appellate decision to the contrary."); *In re Davis*, 11 B.R. 156 (D.Vt. Bkrtcy 1980) (Conversion of secured property with intention to repay money gained from its sale to plaintiff at a later date); *In re Baiata*, 12 B.R. 813, 818 (E.D. N.Y. Bkrtcy 1981) (Regardless of proof of injuries to property, their willful and malicious character could not be established when the plaintiff "failed to call any of the workman who caused the damage to testify as to their intent.")

In the first of the decisions cited immediately above, the court, while observing that the subjective standard makes no sense in determining whether injury to property has been willfully and maliciously inflicted, states that the standard does make some sense as respects injury to person. This is to be questioned, however, when our society has generally regarded injuries to life and limb as more serious matters than injuries to property. Does it really make sense to disregard grievous injuries unless they are inflicted with a "subjective, conscious" "intent to do harm" within the meaning of the foregoing cases? Such a standard might eventually result in the obliteration of liability for personal injury based upon negligence.[3]

Those who initially formulated and employed the phrase "willful and malicious" to distinguish an intentional from a technical conversion perhaps did not foresee the day when the phrase would be applied literally

---

**2.** *In re Bellmer*, Civil Action No. 79–6042–CV–SJ (W.D.Mo.1980), holding that, even though a security agreement clearly provides for certain collateral to be secured under its terms, a bankrupt cannot be liable for its conversion unless he has the "subjective, conscious" intent "to do harm."

**3.** The degree to which inroads are made on the negligence concept may depend on whether liability insurers are able to insist upon a personal judgment against their insureds as a prerequisite to their liability.

to discharge an unliquidated tort liability. And there are other serious questions which now depend upon how the phrase "willful and malicious" is construed, e. g., whether a motor vehicle operator's suspended or revoked driving privileges must be restored even though he has inflicted grave injury. See § 525 of the Bankruptcy Code; *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed. 233 (1971).[4] When these important and basic questions are met upon the issues joined in this case, this court is unwilling to make the determination of whether an unliquidated tort liability is dischargeable on a complaint for relief from the stay when the factual record made is presumably less complete than that which will be made in the trial for which the plaintiffs seek the requested relief. In good conscience, this court cannot agree with a standard which is so subjective that it depends upon the defendant's admission of the crucial element of intention. Even if it must be conceded that "intent to do harm" must be evidenced to make the liability nondischargeable, the proof of that element "is best left to the particular circumstances of each case, keeping in mind that the main purpose of the Bankruptcy Act is to let the honest debtor begin his financial life over." *Matter of Langer*, 12 B.R. 957, 960 (D.N.D.1981). Therefore, in order to ensure that its decision of dischargeability *vel non* is predicated on a full, factual record, this court will grant the complaint for relief from the automatic stay but condition it upon this court's reserving its decision as to the dischargeability of any judgment which may ultimately be obtained.

Although this leaves it open for the plaintiffs to commence their action in another court of concurrent jurisdiction, it seems most convenient and economical for them to bring a proper action for a determination of liability and dischargeability in this court.

It is therefore, accordingly, for the foregoing reasons,

ADJUDGED that the plaintiffs' complaint for relief from the automatic stay be, and it is hereby, granted on condition that the dischargeability of any judgment obtained by plaintiffs, or any of them, be reserved to the bankruptcy court.

4. One wonders whether, under the new standard, a drunken driver could be regarded as having a subjective intent to do harm.